**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:16-CR-128** |
| **ALLAN CORTEZ,** *et al.* | ) | |

## MEMORANDUM OPINION

In this child pornography case, defendant Allan Cortez and his co-defendants are charged in an indictment with conspiring to produce, distribute, and receive child pornography. To defend him against these charges, defendant has retained an experienced defense lawyer who, as it happens, also recently represented, and arguably continues to represent, a person who pled guilty to and was convicted of engaging in the same conspiracy to distribute and receive child pornography as is alleged here against defendant. At issue pretrial, therefore, is whether defendant's retained counsel is disqualified from representing defendant in this case because counsel's previous representation of another member of the alleged conspiracy constitutes an actual or potential conflict of interest. The matter has been fully briefed and argued and is now ripe for consideration and partial disposition.

### I.

A grand jury in the Eastern District of Virginia indicted defendant and his two co-defendants, charging them with the following three offenses: (i) conspiracy to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (e); (ii) conspiracy to distribute and receive child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and (iii) conspiracy to possess and access with intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

1

According to the indictment, defendant and his co-conspirators located minors on public social media sites and induced them into private chatrooms on myvlog.net, and there enticed these minors to engage in and record via web camera lewd and lascivious conduct, including masturbation. Although the alleged co-conspirators apparently never met face-to-face, they purportedly communicated via the internet, where they shared information and tips on how to coax minors into engaging in this sexually explicit conduct on the video camera.

To defend against these serious charges, defendant has retained John Kiyonaga ("Defense Counsel"), an experienced criminal defense attorney. As it happens, this attorney's fund of experience includes the representation of another individual convicted of participating in the same child pornography conspiracy as is alleged in this case.

Specifically, last year, Defense Counsel, pursuant to the Criminal Justice Act,[1] was appointed to represent Stephen Funk, who was accused of engaging in the same conspiracy on the same website as is alleged in the instant case. In December 2015, Funk pled guilty to engaging in the conspiracy and, as a result, was sentenced to 252 months' imprisonment and 20 years of supervised release subject to a number of stringent conditions. *See United States v. Stephen R. Funk*, No. 1:15-CR-172 (E.D. Va. Apr. 1, 2016) (Judgment). Funk's plea agreement incorporated a statement of facts in which he admitted to having engaged in conduct essentially similar to that alleged against defendant in this case, namely to induce minors to engage in lewd and lascivious conduct to be recorded on web camera. *United States v. Stephen R. Funk*, No. 1:15-CR-172 (E.D. Va. Dec. 18, 2015) (Statement of Facts). In addition, Funk's plea agreement included an obligation (i) to "cooperate fully and truthfully with the United States, and [to] provide all information known to the defendant regarding any criminal activity as requested by

---

[1] 18 U.S.C. § 3006A.

2

the government," and (ii) to "testify truthfully and completely at any grand juries, trials, or other proceedings." *United States v. Stephen R. Funk*, No. 1:15-CR-172 (E.D. Va. Dec. 18, 2015) (Plea Agreement).

Importantly, defendant Cortez, by counsel, agrees that the conspiracy to which Funk pled guilty involved the same website at issue in this case. In his submission to the Court, Defense Counsel observed that Funk, "[a]s part of his plea agreement . . . admitted to using the same website, myvlog, which Defendant [Cortez] is now accused of using" (Doc. 76). Not only did the two men use that website, but they used it at the same time, in the same chat rooms; indeed, at oral argument Defense Counsel noted that defendant and Funk were "in the chat room at the same time on three occasions." *United States v. Allan Cortez*, No. 1:16-CR-128 (E.D. Va. Aug. 19, 2016) (Hearing Transcript ("Tr.") 16:22-23).

Defense Counsel did not ignore the potential for a conflict of interest arising in this case as a result of his representation of defendant and Funk. Accordingly, on April 27, 2016, Defense Counsel alerted the government to this potential conflict. He also sought guidance from the Virginia State Bar Association and, as a result, received an email on April 28, 2016 advising Defense Counsel that the state bar's ethics counsel did not see a conflict "unless the prospective client and former client turn against the other" (Doc. 65-3).

Nearly three months later, on July 21, 2016, the government filed a Statement of Issues Relating to Potential Conflict (Doc. 59). In its Statement, the government expressed concern that Defense Counsel faced an actual or potential conflict of interest, precisely because he had also represented Funk in a prosecution involving the same child pornography conspiracy described in defendant's indictment. In this regard, the government noted that it remained possible that the government, pursuant to Funk's plea agreement requiring his cooperation, might compel Funk to

3

testify against defendant and his alleged co-conspirators. Were that to occur, the government noted, Defense Counsel would face the prospect of cross-examining his own client, a clear conflict of interest.

Defense Counsel responded by presenting the opinion of an attorney who purported to be an expert on the Virginia Rules of Professional Conduct. Relying in part on this attorney-expert's opinion, Defense Counsel argued that no conflict existed because the government had declined Funk's offer to cooperate. Specifically, Defense Counsel asserted that the government would accept Funk's cooperation only if Funk could "illuminate physical abuse of a victim[2] or . . . illuminate another website similar to those at bar" (Doc. 65). Defense Counsel further offered to present the testimony of that attorney-expert at a hearing on the issue of an actual or potential conflict of interest.

Soon thereafter, the parties appeared for a hearing on the issue whether an actual or potential conflict of interest existed. In the course of the hearing, Defense Counsel again noted that the government had indicated that there were only two subjects on which Funk's cooperation would be accepted and Funk permitted to testify against defendant and his co-conspirators in this case—the identification of new websites unknown to the government or of additional physical abuse. Tr. 27:20–18:1.[3] The government disputed this assertion, contending instead that the two grounds Defense Counsel recited were the *most likely*, but not the *exclusive*, avenues for Funk to

---

[2] Of course, any time a minor is induced to engage in lewd and lascivious conduct, that minor is physically abused.

[3] Specifically, Defense Counsel argued, "I sought cooperation on behalf of Mr. Funk very early on, and I was told in no uncertain terms that the only way he could cooperate was whether—was if he could point to, A, a website not within that indictment, or, B, an actual instance of physical abuse of a minor, neither of which he was able to do." Tr. 17:20–18:1.

cooperate in future cases. Tr. 20:16–21:1.[4] Defense Counsel responded that the government had changed its previous position and therefore should be "promissorily estopped" from calling Funk as a witness at defendant's trial. Tr. 22:17-21.[5] Although the government represented that it did not presently intend to call Funk as a witness at defendant's trial, the government, when pressed, could not rule out the possibility of calling Funk to testify against defendant as to the manner and means by which the child pornography website operated in the course of the alleged conspiracy. Tr. 21:13-22.[6]

_____

[4] In this regard, the government's counsel stated,

> That was not the government's position, your Honor. We said those would be the
> most likely avenues for cooperation, but we have never foreclosed the possibility
> of using a coconspirator in further prosecution of other coconspirators in this case.
> As your Honor is aware, we did in fact use a coconspirator to testify at the
> previous trial in this matter. So it's always been a possibility and not something
> the government has ever expressed foreclosing for any defendant.

Tr. 20:16–21:1.

[5] In his submissions and at oral argument, Defense Counsel has cited no authority to support his argument regarding promissory estoppel.

[6] At the hearing, the government's counsel specifically stated,

> [GOVERNMENT'S COUNSEL]: I will say at this point in time, the government
> does not intend to call Mr. Funk as a witness, but it is still possible that as the case
> develops and we proceed to trial, that the government would want to call him as a
> witness. But at this time we can say we do not intend for that path.

> THE COURT: Well, are you willing to say under no circumstances you will call
> him?

> [GOVERNMENT'S COUNSEL]: No, your Honor. The government is not willing
> to say that at this time.

Tr. 21:13-22.

A ruling on the matter was reserved, however, because neither the government nor Defense Counsel had addressed in their written submissions the governing standard regarding potential or actual conflicts of interest in a criminal case—namely, the Sixth Amendment. Accordingly, Defense Counsel was afforded an opportunity to submit a supplemental pleading to address the Constitutional issues involved. Defense Counsel complied by filing an Addendum to Defendant's Response to Government's Statement of Issues Relating to Potential Conflict by Defense Counsel (Doc. 76).

## II.

The threshold issue is the question of governing law. Both the government and Defense Counsel in their memoranda addressing the conflict of interest issue focused solely on the Virginia Rules of Professional Conduct. This focus was mistaken; the governing body of law under which the actual or potential conflict of interest of an attorney representing a defendant in a federal criminal prosecution should be assessed is the Sixth Amendment and federal decisional authority interpreting it, for it is this Amendment that guarantees the right to conflict-free counsel. *See Strickland v. Washington*, 466 U.S. 668, 688 ("Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest."); *Hoffman v. Leeke*, 903 F.2d 280, 285 (4th Cir. 1990) ("[T]he Sixth Amendment right to counsel includes the right to effective assistance free of conflicts of interest[.]"). In the words of Justice O'Connor, "[p]revailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable [pursuant to the Sixth Amendment right to effective counsel], but they are only guides." *Strickland*, 466 U.S. at 688.

To be sure, a state bar's professional rules of conduct have a role to play,[7] but not a dispositive one. Indeed, because state ethical rules are, as the Supreme Court has noted, "only guides" in the context of the Constitutional right to counsel, compliance with a state ethical rule will not always satisfy the Sixth Amendment. *See id.* The converse is also true, for a "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside,* 475 U.S. 157, 165 (1986).

In sum, the Sixth Amendment and federal decisional authority applying that Amendment are the proper source of governing law as to whether Defense Counsel has an actual or potential conflict of interest and, if so, whether that conflict may be waived.

### III.

A second threshold question arises by virtue of Defense Counsel's assertion that it was inappropriate for the government to raise the question whether Defense Counsel has an actual or potential conflict. Defense Counsel is incorrect; both the Sixth Amendment and the Virginia Rules of Professional Conduct invite, indeed compel, prosecutors to alert a trial court to a defense attorney's potential or actual conflict. *See, e.g., Wheat v. United States,* 486 U.S. 153, 155 (1988) (affirming disqualification of a criminal defense attorney for a potential conflict that the government had brought to the trial court's attention); Va. R. Prof'l Conduct 1.7 cmt. 9 ("In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question."). This is a sensible

---

[7] Local Criminal Rule 57.4(I) provides that "the ethical standards relating to the practice of law in criminal cases in [the Eastern District of Virginia] shall be Section II of Part Six of the Rules of the Virginia Supreme Court[.]" The Virginia Supreme Court, in turn, adopted the Virginia Bar's Rules of Professional Conduct.

requirement, as it is neither in defendant's nor the government's interest to proceed with a case that is infected with an incurable conflict of interest.[8]

## IV.

A third preliminary question must be addressed here, as Defense Counsel seeks to offer the expert testimony of a Virginia lawyer on the proper interpretation and application of the Virginia Rules of Professional Conduct to the facts of this case. Thus, the third question is whether such testimony is properly admissible under Rule 702, Fed. R. Evid. It is not.

Rule 702(a) provides, in pertinent part, that a qualified expert may testify to an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[9] Testimony that merely states a legal conclusion as to the meaning or application of a rule or statute is not "helpful," as required by Rule 702, Fed. R. Evid. Judge Easterbrook, in his typically pithy fashion, has concisely noted that "[t]he only legal expert in a federal courtroom is the judge." *United States v. Caputo*, 517

---

[8] Of course, a trial court must be mindful that a party may have ulterior motives when raising the question whether opposing counsel labors under an actual or potential conflict. *See Wheat*, 486 U.S. at 163 (observing that trial courts "must take into consideration" the possibility that "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side"); *United States v. Perry*, 30 F. Supp. 3d 514, 533 (E.D. Va. 2014) ("[A] motion seeking to disqualify counsel can be used improperly for 'purely strategic purposes[.]'") (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)); *cf.* Va. R. Prof'l Conduct 1.7 cmt. 9 ("[A]n objection [to opposing counsel's conflict] should be viewed with caution, . . . for it can be misused as a technique of harassment."). Given the potential conflict in the instant case, the government's Statement of Issues does not raise concerns of harassment or gamesmanship.

[9] Rule 704(a) further provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." In this respect, "Rule 704(a) was designed specifically to abolish the 'ultimate issue' rule" which, at common law, barred such opinions. *United States v. Barile*, 286 F.3d 749, 759 (4th Cir. 2002). But Rule 704(a) "does not lower the bars so as to admit all opinions." *Id.* Rather, an opinion on the ultimate issue must still be "helpful to the trier of fact," pursuant to Rule 702. *Id.* at 759-60.

F.3d 935, 942 (7th Cir. 2008). Therefore, "the meaning of [a] statute and regulations [is] a subject for the court, not for testimonial experts." *Id.* Similarly, the Fourth Circuit has held that an expert opinion is "generally inadmissible" if it "states a legal standard or draws a legal conclusion by applying law to the facts[.]" *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (citation omitted).

Simply put, an expert telling a judge how to interpret a rule or statute does nothing more than give an attorney a redundant means of presenting legal argument to the Court. Nothing prevented Defense Counsel from making his arguments through his briefs or oral argument. As one treatise notes, "[e]ven during a bench trial there seems no compelling reason to allow live testimony by conflicting experts on the law, as written briefs, supplemented by oral argument by counsel if appropriate, will serve the same function." The New Wigmore: A Treatise on Evidence: Expert Evidence § 2.3.

These principles, applied here, make clear the inadmissibility of Defense Counsel's state-law expert. Based on Defense Counsel's proffer, the testimony would comprise an attorney-witness's conclusions on whether the facts at bar presented a conflict under the Virginia Rules of Professional Conduct. Such testimony runs afoul of *McIver*'s prohibition of expert legal testimony that "states a legal standard or draws a legal conclusion by applying law to the facts[.]" *See* 470 F.3d at 562. Defense Counsel was afforded the opportunity to include in his brief and at oral argument the same points advanced by his expert.

## V.

The controlling question presented is whether there exists in this case a conflict, potential or actual, arising from Defense Counsel's previous representation of another member of the alleged conspiracy, and whether client waivers might cure any existing conflict of interest.

## A.

To determine whether Defense Counsel in this criminal case labors under an actual or

potential conflict of interest, analysis properly begins with the Sixth Amendment. The Sixth

Amendment guarantees defendants the right to a lawyer unencumbered by an actual conflict or

serious potential for conflict. *See Hoffman*, 903 F.2d at 285.

An actual conflict of interest "occurs in circumstances where a lawyer's interests are such

that it is reasonable to believe that she or he would be tempted to act in a manner inimical to the

client's best interests." *Reckmeyer v. United States*, 709 F. Supp. 680, 688 (E.D. Va. 1989); *cf.*

*United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991) (actual conflict exists "[w]hen the

attorney is actively engaged in legal representation which requires him to account to two masters

[and] it can be shown that he took action on behalf of one"). Of course, an actual conflict "is not

always as apparent as when [counsel] formally represents two parties who have hostile interests."

*Tatum*, 943 F.2d at 376. Rather, an actual conflict of interest may include situations where a

lawyer "harbor[s] substantial personal interests which conflict with the clear objective of his

representation of the client," or where counsel's "continuing duty to former clients may interfere

with his consideration of all facts and options for his current client." *Id.*; *cf.* Va. R. Prof'l

Conduct 1.7 cmt. 8 (providing that a conflict exists "when a lawyer cannot consider, recommend,

or carry out an appropriate course of action for the client because of the lawyer's other

responsibilities or interests").

As the Fifth Circuit has observed, a number of factors may help determine whether a

conflict of interest exists. These factors include (i) "whether the attorney has confidential

information that is helpful to one client but harmful to another"; (ii) "whether and how closely

the subject matter of the multiple representations is related"; (iii) "how close in time the multiple

10

representations are related"; and (iv) "whether the prior representation has been unambiguously terminated." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005). Importantly, the Sixth Amendment applies not only when a defense lawyer has an *actual* conflict of interest, but also "in the more common cases" where a serious *potential* for conflict exists. *Wheat*, 486 U.S. at 163.

Of course, there is clearly an actual conflict of interest in the event the government calls Funk as a witness in its case against defendant. Were that to occur, Defense Counsel would face an intolerable choice between (i) pulling punches on cross-examination[10] (to defendant's detriment), or (ii) undermining the admissibility, credibility, and weight of Funk's testimony (to Funk's detriment).

A conflict of interest may also arise by virtue of Defense Counsel's continuing obligation to Funk to seek a sentence reduction for substantial assistance to the government, pursuant to Rule 35, Fed. R. Crim. P. To be sure, it is a close call whether Defense Counsel, as an appointed lawyer to Funk, has an ongoing obligation at the Rule 35 stage. Defense Counsel has argued in his brief that "Mr. Funk has no appellate or other post conviction issues necessitating [Defense Counsel's] assistance" (Doc. 76). Although he cites no authority for this claim, some cases could support Defense Counsel's position. For instance, the Fourth Circuit has observed that there is no *Constitutional* right to counsel—and thus no claim for ineffective assistance of counsel—with respect to a Rule 35(b) motion. *See United States v. Taylor*, 414 F.3d 528, 535 (4th Cir. 2005). On the other hand, some authority has held that "[a]n attorney's appointment to represent an indigent under [the Criminal Justice Act] extends until a motion under Rule 35 is filed and

---

[10] In some circumstances, such a conflict of interest may be cured by the appointment of auxiliary counsel to perform the cross-examination. This Rubicon need not be crossed, however, until after it can be determined whether Funk wishes to waive his right to conflict-free counsel.

argued, or the [time] to file the motion has expired . . . ." *United States v. Morales*, 498 F. Supp. 139, 143 (E.D.N.Y. 1980).

Ultimately, several factors tip the scales toward finding that Defense Counsel has an ongoing duty to Funk. The first is that Defense Counsel said as much during oral argument. Tr. 19:7-15.[11] Second, the temporal proximity between the instant case and Funk's plea indicates that Defense Counsel still has a duty to Funk. Importantly, Rule 35(b), Fed. R. Crim. P., establishes a year-long window from the date of sentencing in which the government may move the Court to reduce a sentence for substantial assistance. Funk is well within that window, as he was sentenced on April 1, 2016. *See United States v. Stephen R. Funk*, No. 1:15-CR-172 (E.D. Va. Apr. 1, 2016) (Judgment). Third, the government has asserted that Defense Counsel has misinterpreted the government's representations, and that the government has indeed left open the possibility for Funk to testify against defendant and his co-conspirators. Tr. 21:13-22.

Given Defense Counsel's ongoing duty to Funk, the conflict of interest is readily apparent: as counsel for Funk, Defense Counsel should attempt to persuade the prosecution to call Funk against defendant, so that Funk may receive a reduced sentence pursuant to Rule 35, Fed. R. Crim. P.; at the same time, as counsel for Cortez, Defense Counsel should seek to

---

[11] The transcript reads as follows:

> THE COURT: [Funk] is serving a 21-year sentence. Isn't it your duty, your responsibility, to him to urge the government to put him on against Mr. Cortez, so he can get a Rule 35 and avoid a 21-year sentence?

> [DEFENSE COUNSEL]: Your Honor, I certainly have an ongoing duty to Mr. Funk to try to diminish his sentence. I believe I met that duty when I asked the government which means might be available to me to do that.

Tr. 19:7-15.

exclude, diminish, or discredit Funk's testimony—which would undermine Funk's efforts to reduce his sentence.

Although the parties have not identified any authorities on point, Supreme Court and Circuit Court decisional law is instructive. In *Wheat v. United States*, the Supreme Court found a serious potential conflict—and upheld the disqualification of a defense attorney—where the attorney aimed to engage in the successive representation of several individuals charged with participating in an overlapping conspiracy. 486 U.S. at 153. There, one alleged member of a drug conspiracy sought to retain a lawyer who had already represented two other alleged members of the same conspiracy. *Id.* at 155. Importantly, the attorney's new client was "likely to be called as a witness for the Government" against one of the lawyer's existing clients, and vice versa. *Id.* at 155-56. The Supreme Court concluded that disqualification was proper, despite conflict-waivers from all three affected clients. *Id.* at 159.

The Fourth Circuit reached a similar conclusion in *United States v. Williams*, another case in which a defense attorney faced the prospect of cross-examining a former client. 81 F.3d 1321 (4th Cir. 1996). There, a defendant charged with bank fraud hired a lawyer that had previously represented, during the FBI's investigation into the matter, the government's initial suspect. Specifically, the government planned to call the lawyer's former client to testify against the current client. In upholding the lawyer's disqualification, the appellate panel perceived a "potential conflict" comprising dual risks: either the lawyer (i) would improperly use privileged information during cross-examination (to his former client's detriment), or (ii) he would fail effectively to cross-examine the witness (to his present client's detriment). *Id.* at 1325.

The Fifth Circuit provides further persuasive authority. *See Infante* 404 F.3d 376. In that drug conspiracy case, a defense attorney ultimately cross-examined two former clients who

testified for the government against a present client. *Id.* at 390. Before trial, however, the government brought a motion, pursuant to Rule 44, Fed. R. Crim. P., to alert the district court to the potential conflict of interest arising from defense counsel's prior representation of the government's witnesses. *Id.* During the course of the motion hearing, the defense attorney conceded that he had previously represented two of the government's proffered witnesses and that he would pursue sentence reductions on their behalf, pursuant to Rule 35, Fed. R. Crim. P., if these former clients testified. *Id.* The district court concluded pretrial that there was no conflict of interest; on review, the Fifth Circuit disagreed.[12] Importantly, in addition to identifying the inherent conflict involved with cross-examining a former client, the appellate panel emphasized that a conflict existed because (i) the previous clients had pled guilty to crimes that were part of the same conspiracy as alleged against the present client; (ii) the subject matter of each client's case was nearly identical; (iii) the prior representations and the present client's case were close in time; and (iv) defense counsel did not unambiguously end the prior representations, given his self-professed obligations to his previous clients pursuant to Rule 35, Fed. R. Crim. P. *See id.* at 391-93. Many of these factors are present in the instant case.

Whereas *Wheat*, *Williams*, and *Infante* were cases involving likely or actual government witnesses, disqualification may also be justified even where the prosecution has not yet decided whether to call a defense attorney's former client against a present client. *United States v. Williams*, 439 F. App'x 254 (4th Cir. 2011) (unpublished). There, the Fourth Circuit upheld the disqualification of a defense lawyer on the ground that she had previously represented a possible

---

[12] The appellate panel was not moved by arguments that the defense attorney lacked any relevant confidential information obtained from the prior representations for use in the subsequent case. *Id.* at 392. Nor was the court persuaded by the fact that the former client-witnesses lacked any knowledge of the defendant's involvement in the conspiracy. *Id.*

government witness, the defendant's father. *Id.* at 256. This potential witness had been convicted in a previous matter and hoped to receive a reduced sentence by cooperating with the government against his son, pursuant to Rule 35, Fed. R. Crim. P. *See Williams*, 439 F. App'x at 256. Even though the government had not yet decided whether it would call the witness, the government moved to disqualify the defense attorney because of the potential conflict of interest. *Id.* The Fourth Circuit concluded that, despite the government's uncertainty whether the witness would ultimately be called, the government's motion to disqualify the defendant's counsel "was properly granted" in light of the district court's broad discretion and Circuit precedent. *Id.* at 256-57 (citing *Williams*, 81 F.3d 1321).

The standards elucidated in these cases, applied here, point convincingly to the existence of a serious potential conflict on the part of Defense Counsel.[13]

---

[13] The Virginia Rules of Professional Conduct point to the same result as that required by the Sixth Amendment standard, regardless whether the conflicts are "concurrent" or "successive."
Rule 1.7 provides that a concurrent conflict exists if (i) "the representation of one client will be directly adverse to another client," or (ii) "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client . . . ." In turn, Rule 1.9(a) provides that a lawyer may not represent a new client if: (i) the lawyer has "formerly represented a client in a matter," (ii) the representation of the new client involves "the same or a substantially related matter" as the previous representation, and (iii) the new client's interests are "materially adverse" to the former client's interests.
Pursuant to either Rule, Defense Counsel's clients have adverse interests. Additionally, pursuant to Rule 1.9, defendant's and Funk's cases appear to be "substantially related," because Defense Counsel had ample opportunity to obtain confidential information from Funk that could be relevant to defendant's case. *See, e.g., Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 730 (E.D. Va. 1990) (noting that the phrase, "substantially related," has been used to describe situations where a lawyer "could have obtained confidential information in the first representation that would have been relevant in the second"); *Rogers v. Pittston Co.*, 800 F. Supp. 350, 354 (W.D. Va. 1992) ("No actual receipt of confidences must be shown" to establish that two matters are substantially related).

## B.

Given the existence of at least a potential conflict, the question is whether a knowing and voluntary waiver by defendant and Funk could cure that potential conflict, or whether it is instead proper to disqualify Defense Counsel.

### 1.

In some cases, a defendant may make a knowing and voluntary waiver of his right to conflict-free counsel. *See United States v. Duklewski*, 567 F.2d 255 (4th Cir. 1977). In determining whether to accept such a waiver, a district court "must make as thorough and long an inquiry as necessary to determine whether the accused is voluntarily, knowingly and intelligently waiving his right." *Hoffman*, 903 F.2d at 288. A waiver is voluntary if it is "an intentional relinquishment or abandonment" of the right to conflict-free counsel. *Id.* Such a waiver is knowing and intelligent if the defendant knows the basis for, and potential consequences of, his chosen counsel's alleged conflict of interest. *See id.* at 289; *Duklewski*, 567 F.2d at 257. Ultimately, the defendant must know "the crux of the conflict *and* [have] an understanding of its implications . . . even if the defendant does not know each detail concerning the conflict." *United States v. Brown*, 202 F.3d 691, 698 (4th Cir. 2000).

Here, Rule 44(c)(2), Fed. R. Crim. P., offers guidance and standards by which to ascertain whether a waiver is knowing and voluntary. The Rule provides that

> [t]he court must promptly inquire about the propriety of joint representation and . . . personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.[14]

---

[14] Rule 44, of course, requires trial courts to conduct an inquiry into *joint* representation of *co-*defendants, and does not appear to require the same procedures for a conflict involving a defense

The Advisory Notes further provide that a district court should, *inter alia*, (i) forthrightly advise each affected client of the right to effective representation and of the potential dangers of representation by conflicted counsel; (ii) ensure that each affected client understands that right and those perils; (iii) grant each affected client the liberty to ask questions regarding the nature and consequences of his legal representation; (iv) ascertain whether each affected client has discussed the matter with his attorney, or whether he wishes to consult outside counsel; (v) endeavor to have each affected client personally articulate in detail his intent to waive his right to conflict-free counsel; and (vi) record the waiver colloquy.

Here, defendant voluntarily, knowingly, and intelligently waived his Sixth Amendment right to conflict-free counsel. Defendant was *voir dired* under oath and advised as to the nature and dangers of Defense Counsel's conflict. Defendant was also informed of his right to have conflict-free counsel appointed on his behalf. Once he was fully informed of his rights and the risks of proceeding with representation by a conflicted attorney, defendant stated unequivocally that he wished to proceed with Defense Counsel as his attorney in this matter. Tr. 45:2–48:25.

**2.**

Because Defense Counsel's conflict of interest could affect Funk too, it is necessary to determine whether Funk also wishes to waive his right to conflict-free counsel. Accordingly, appropriate steps will be taken to ascertain whether Funk wishes to waive his right. In that regard, it is appropriate for Defense Counsel to address the issue of a potential conflict with

---

attorney's representation of two individuals successively tried in separately captioned cases. Nevertheless, compliance with Rule 44 helps to ensure that a defendant's waiver is proper.

Funk;[15] but, in an abundance of caution, independent counsel will also be appointed to advise

Funk prior to and during a *voir dire* concerning Funk's waiver.[16]

The final issue to consider will be whether waiver by both defendant and Funk is

sufficient, or whether Defense Counsel's conflict is not waivable, therefore requiring

disqualification. In considering this question, it will be necessary to weigh carefully a criminal

defendant's Sixth Amendment rights to conflict-free counsel and counsel of choice, as well as

the judiciary's independent duty to safeguard the integrity of criminal proceedings. *See Wheat*,

486 U.S. at 162 ("("[W]here a court justifiably finds an actual conflict of interest, there can be no

doubt that it may decline a proffer of waiver, and insist that defendants be separately

represented."); *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997) ("The right [to

counsel of choice] is circumscribed by . . . the obligation of trial courts to safeguard the integrity

of the proceedings before them.").[17]

---

[15] The Advisory Notes to Rule 44, Fed. R. Crim. P., specifically contemplate that the affected clients may consult their conflicted counsel; thus, it is not improper to permit Defense Counsel to discuss with Funk the possibility of waiving the right to conflict-free counsel.

[16] Because Funk is currently serving his sentence in Wisconsin, arrangements will be made to ensure that Funk is represented by local independent counsel. Although Rule 44, Fed. R. Crim. P., does not *require* a district court to appoint independent counsel, it is appropriate in these circumstances to do so.

[17] As the Supreme Court has noted, the decision to accept or reject a waiver turns on whether the "legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160). In this regard, a district court must "exercise its own independent judgment as to whether the proceedings are likely to have the requisite integrity if a particular lawyer is allowed to represent a party." *Williams*, 81 F.3d at 1324. Accordingly, a trial court "must have sufficiently broad discretion to rule without fear that it is setting itself up for reversal on appeal either on right-to-counsel grounds if it disqualifies the defendant's chosen lawyer, or on ineffective-assistance grounds if it permits conflict-infected representation of the defendant." *Id.* Thus, in addressing actual or potential conflicts of interest, "the trial court is not to weigh the circumstances 'with hair-splitting nicety[.]'" *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir. 1977) (citation omitted). Rather, "in the proper exercise of [the trial court's] supervisory power over members of

**VI.**

In sum, (i) the Sixth Amendment provides the salient, dispositive standard for analyzing whether Defense Counsel has a conflict of interest; (ii) the government properly raised the question whether Defense Counsel has an actual or potential conflict of interest; (iii) the proffered expert testimony is inadmissible; (iv) Defense Counsel has a potential for conflict; and (v) it is necessary, despite defendant's waiver of his right to conflict-free counsel, to determine whether Funk wishes to waive the same and, if so, whether such waivers would undermine the integrity of these criminal proceedings.

An appropriate Order will issue.


Alexandria, Virginia
August 30, 2016


T. S. Ellis, III
United States District Judge


---

the bar and with a view to preventing 'the appearance of impropriety,' [the court] is to resolve all doubts in favor of disqualification." *Id.*